**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **JOHN DOE,** | ) | **CASE NO.1:14CV2044** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **CASE WESTERN RESERVE UNIV.** | ) | <u>**OPINION AND ORDER**</u> |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Motion by Defendants Case Western Reserve University ("CWRU"), Cleveland Clinic Foundation, *d.b.a.* Cleveland Clinic Lerner College of Medicine of Case Western Reserve University ("Lerner College"), and Dr. Kathleen Franco ("Franco") to Dismiss Plaintiff John Doe's ("Plaintiff") Claims for Failure to State a Claim upon which Relief can be Granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court grants Defendants' Motion and dismisses Plaintiff's claims.

**Standard of Review**

"In reviewing a motion to dismiss, we construe the complaint in the light most

favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc.* v. *Treesh,* 487 F.3d 471,476 (6th Cir.2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir.1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 679.

Therefore, for the purposes of this Motion to Dismiss, the Court accepts the Plaintiff's factual allegations as true and construes the Complaint in the light most favorable to Plaintiff. However, the Court will not credit the Complaint's mere conclusory statements without reference to its factual context. *Id.* at 686.

**Factual Background**

On the evening of April 13, 2013, Plaintiff, a student at Lerner College, went out in downtown Cleveland with several classmates. At the end of the evening, Plaintiff took a cab to Cleveland Heights with his classmates, including Jane Roe. Both Plaintiff and Jane Roe had been drinking. Although his girlfriend was out of town, Plaintiff planned to spend the

2

night at his girlfriend's apartment in Cleveland Heights.  However, upon arriving in

Cleveland Heights, Jane Roe asked Plaintiff to accompany her in the taxi to her residence in

Bratenahl.  Plaintiff agreed.  (Compl. ¶ 2-3).

   After arriving at her residence, Jane Roe told Plaintiff to stay at her home for the

evening.  Jane Roe agreed for Plaintiff to sleep in her bed.  Plaintiff and Jane Roe then

engaged in consensual sexual contact.  The next morning, Plaintiff and Jane Roe discussed

the sexual contact.  Both Plaintiff and Jane Roe were concerned because they were in

relationships with other people.  (Id. ¶ 4).

   Jane Roe surprised Plaintiff a couple weeks later by telling him that she blamed

Plaintiff entirely for the sexual contact that had occurred between them.  (Id. ¶ 5).  Jane Roe

and Plaintiff were part of the same academic group at Lerner College.  On July 23, 2013,

three months after the April 13 incident, Jane Roe made a request to her advisor that she be

removed to a different group, alleging that Plaintiff had sexually assaulted her as justification

for the move.  Jane Roe later repeated this accusation to Franco, Associate Dean of

Admission and Student Affairs at Lerner College.  After Jane Roe's report to Franco, in

which she alleged that Plaintiff had also sexually assaulted another student, Plaintiff was

charged under CWRU's Sexual Assault Policy on July 25, 2013, and was issued a no-contact

order in regards to Jane Roe.  (Id. ¶ 40-44).

   A three-person CWRU University Judicial Board ("UJB") held a hearing on Plaintiff's

case on August 8, 2013.  Plaintiff was permitted to review a redacted version of the case file

before his hearing, though not all of the evidence CWRU had collected was included in the

case file.  Plaintiff was allowed to have a silent support person, who was not allowed to

participate in the proceedings, present at the hearing.  (Id. ¶ 7).  During the hearing, Plaintiff

was not allowed in the same room as Jane Roe.  Plaintiff was required to direct his questions

to the UJB.  The UJB would then direct the questions to Jane Roe.  However, the UJB refused

to ask certain questions in regards to written and verbal exchanges between Jane Roe and

Plaintiff.  The UJB, and Chairperson Donald Kamalsky in particular, treated Plaintiff in a

hostile fashion during the hearing.  (Id. ¶ 7; 49-50).

Upon completion of the hearing, the UJB found that Plaintiff had violated CWRU's

sexual assault policy because Jane Roe was intoxicated and could therefore not consent to

sexual contact.  (Id. ¶ 52).  The UJB suspended Plaintiff from his studies for one year.  The

UJB also declared Plaintiff a *persona non grata* at CWRU and Lerner College during the one-

year suspension, continued the no contact order and required that Plaintiff create a behavioral

plan and submit to a drug and alcohol assessment.  The UJB considered expelling Plaintiff but

rejected this measure as too severe.  Plaintiff was not permitted to appeal the UJB's findings.

However, Plaintiff appealed the sanctions through a written statement.  Plaintiff was not

permitted to appear in front of the Appeal Review Panel ("ARP") personally.  Plaintiff's

appeal was denied by the ARP.  (Id. ¶ 53-55).  Plaintiff later found out an anonymous letter

that he had not been allowed to review, was admitted into the evidence.  Franco and Jane Roe

pressured the author into writing the letter.  (Id. ¶ 60).

Following the UJB hearing, the Lerner College's Medical Student Promotion and

Review Committee ("MSPRC") met to review Plaintiff's performance at Lerner College

based on the UJB adjudication.  Plaintiff was not notified about this hearing and did not

attend.  Franco provided flawed testimony and evidence against Plaintiff at the hearing,

4

including the letter that Franco had pressured a student into writing.  (Id. ¶ 63-64).

The MSPRC informed Plaintiff by letter on September 27, 2013, of its decision to expel Plaintiff from Lerner College.  Plaintiff appealed the expulsion.  An appeal hearing was held by Lerner College on October 24, 2013.  Lerner College informed Plaintiff by letter that it had affirmed his expulsion on October 25, 2013.  (Id. ¶ 11).

On November 22, 2013, Plaintiff received a letter from CWRU School of Medicine's Committee on Students ("Committee"), informing Plaintiff that the Committee had passed a motion upholding his expulsion.  Plaintiff was not previously notified about the meeting to consider the motion and was provided no opportunity to present a written defense, in violation of CWRU School of Medicine's policies.  (Id. ¶ 70-71).

During the course of the academic disciplinary proceedings, a police report was filed in regards to the April 13 incident.  A Cuyahoga County Grand Jury declined to indict Plaintiff.  (Id. ¶ 73).

Plaintiff's educational and professional opportunities have been severely limited by his expulsion.  Lerner College recognized Plaintiff as a "stellar student" prior to the disciplinary proceedings at issue here.  (Id. ¶ 75).  However, the expulsion has so tarnished Plaintiff's academic and disciplinary record that he will be unable to gain admission to another medical school.  The resources Plaintiff expended on his academic career were squandered.  (Id. ¶ 76-77).

Following his expulsion, Plaintiff filed a Complaint in the U.S. District Court for the Northern District of Ohio alleging: (**I**) Violations of Title IX's Prohibition on Discrimination on the Basis of Sex and Violations of Department of Education and Department of Justice

regulations requiring "prompt and equitable resolution" of student complaints by Defendant
CWRU; (**II**) Violations of Title IX's Deliberate Indifference Standard by Defendant CWRU;
(**III**) Breach of Contract by Defendant CWRU; (**IV**) Breach of Contract by Defendant Lerner
College; (**V**) Breach of Covenants of Good Faith and Fair Dealing by CWRU and Lerner
College; (**VI**) Estoppel and Reliance against Defendants CWRU and Lerner College; (**VII**)
Intentional Infliction of Emotional Distress against all Defendants; (**VIII**) Slander Per Se
against Defendant Franco; and (**IX**) Negligence against all Defendants.  Plaintiff further
requests (**X**) Declaratory Judgment that the findings of Defendants CWRU and Lerner
College's disciplinary proceedings are invalid; and (**XI**) Injunctive Relief requiring
Defendants CWRU and Lerner College to reinstate Plaintiff's student status and scholarship
and to remove all references of violations from Plaintiff's educational record.

**Plaintiff's Title IX Claim**

Title IX states, in relevant part, that "[n]o person in the United States shall, on the
basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to
discrimination under any education program or activity receiving Federal financial
assistance."  20 U.S.C. §1681(a).  The Department of Education and the Department of
Justice have also adopted regulations that require schools to "adopt and publish grievance
procedures providing for the prompt and equitable resolution of student […] complaints
alleging any action that would be prohibited by" Title IX regulations.  34 C.F.R. §106.8(b);
28 C.F.R. §54.135(b).

Defendants argue that Plaintiff's Complaint fails to state a claim for relief because
alleged failures by a university to comply with Title IX regulations do not give rise to a

private right of action.  (Doc. 17, 108).  Defendants are correct insofar as allegations that an educational institution failed to promulgate a grievance procedure or comply with other Title IX administrative requirements, with nothing further, do not give rise to a private cause of action.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998).  However, the Sixth Circuit has recognized a private right of action under Title IX where a plaintiff alleges that an educational institution implemented disciplinary actions that discriminated against the plaintiff based on sex.  *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638-39 (6th Cir. 2003), citing *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994).

"Title IX claims [...] arising from disciplinary hearings are analyzed under the 'erroneous outcome' standard, 'selective enforcement' standard, 'deliberate indifference' standard, and 'archaic assumptions' standard."  *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009), citing *Mallory*, 76 F. App'x at 638.  Under the erroneous outcome standard, a plaintiff attempts to demonstrate that he was innocent of the charges presented and wrongly found to have committed an offense in an educational institution's disciplinary proceedings.  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  Under the selective enforcement standard, a plaintiff attempts to show that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender."  *Id*.  A showing of deliberate indifference "requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct."  *Mallory*, 76 F. App'x at 638, citing *Gebser,* 524 U.S. 274.  A showing of archaic assumptions requires the plaintiff to demonstrate "discriminatory intent in actions resulting from

classifications based upon archaic assumptions." *Id*. at 638-39 (internal citations omitted). Under each of these standards, a plaintiff must demonstrate that the educational institution's challenged misconduct was motivated by sex-based discrimination. *Id*. at 639.

Plaintiff's Complaint unnecessarily separates his Title IX grievances into two distinct claims against CWRU; one for violation of Title IX and one for violation of Title IX's deliberate indifference standard. The deliberate indifference standard is a means of analyzing a plaintiff's Title IX claim arising from disciplinary hearings. *Mallory*, 76 F. App'x at 638. Plaintiff's claim for relief arises out of his treatment by CWRU in the course of disciplinary hearings. Therefore, Plaintiff's second claim (violation of deliberate indifference standard) will be analyzed as part of his first claim (violation of Title IX), as "deliberate indifference" is simply one standard by which to determine whether CWRU's treatment of Plaintiff during disciplinary hearings violated Title IX.

Plaintiff's Complaint alleges that "[a]s a direct result of CWRU's discriminatory practices […] [Defendants] […] reached an erroneous outcome" in their respective disciplinary hearings. (Compl. ¶ 93). The Complaint also alleges that the "Defendants imposed sanctions on Plaintiff that were disproportionate to the severity of the charges levied against him […]." (Id. ¶ 90). As such, the Complaint alleges Title IX violations based on the erroneous outcome, selective enforcement and deliberate indifference standards. The Complaint does not allege a violation based on the archaic assumptions standard.

**Erroneous Outcome**

Plaintiff's Complaint contains sufficient factual allegations under the 'erroneous outcome' standard to establish a plausible claim that Plaintiff was innocent of the charges

8

levied against him and that CWRU wrongly found that Plaintiff committed the offense. Plaintiff alleged that Franco pressured a student to provide evidence against Plaintiff and that Plaintiff was not permitted to review this evidence in developing a defense.  Plaintiff also alleges that he was denied the right to effectively cross-examine Jane Roe and was treated in hostile fashion at the UJB hearing.  These factual allegations are sufficient "to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf*, 35 F.3d at 715.

However, Plaintiff's Complaint must also plausibly allege that CWRU's actions "were motived by sexual bias" or that its "disciplinary hearing process constitutes a 'pattern of decision-making' whereby the […] disciplinary procedures governing sexual assault claims is 'discriminatorily applied or motivated by a chauvinistic view of the sexes'" to meet the 'erroneous outcome' standard.  *Doe v. Univ. of the S.*, 687 F. Supp. 2d at 756, citing *Mallory*, 76 F.App'x at 640 (internal citation omitted).  Here, Plaintiff fails to make factual allegations that create a plausible claim that the motivating factor behind the erroneous finding was CWRU's sexual bias.

Plaintiff's Complaint relies on conclusory statements in an effort to establish a plausible claim that CWRU was motivated by sexual bias in arriving at an erroneous finding in its disciplinary proceedings against Plaintiff.  Plaintiff twice states that, "[u]pon information and belief, CWRU's preferential treatment of Jane Roe over Plaintiff is undeniably linked to her female gender and against Plaintiff's male gender."  (Compl. ¶ 51; 72).  Plaintiff points to procedural defects in the disciplinary hearings as evidence of discriminatory bias.  The Complaint also alleges that CWRU's decision was "discriminatory,

presumptive and/or arbitrary and capricious" based on the hostile attitude of the UJB towards Plaintiff during proceedings.  (Compl. ¶ 7; 87; 89).  While these pleadings may call to question the outcome of the proceedings, they are not factual allegations supporting the conclusion that the procedural flaws and hostility towards Plaintiff were motivated by sexual bias.

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  *Iqbal*, 556 U.S. at 679.  Here, Plaintiff's Complaint fails to plead any factual allegations that support the conclusion that CWRU discriminated against Plaintiff based on his sex.  "Such allegations might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Yusuf*, 35 F.3d at 715.  However, a single case by an individual who was displeased by the result of a disciplinary proceeding cannot constitute a pattern of decision-making.  *Univ. of the S.*, 687 F. Supp. 2d at 756, citing *Mallory*, 76 F.App'x at 640 (internal citation omitted).

A "[p]laintiff's subjective belief that he was the victim of discrimination – however strongly felt – is insufficient to satisfy his burden at the pleading stage."  *Doe v. Columbia Univ.*, 2015 WL 1840402 at 11 (S.D.N.Y.) (internal references omitted), *appeal taken*, No. 15-1661 (2d Cir.).  Plaintiff's Complaint fails to state a claim for which relief can be granted under Title IX's 'erroneous outcome' standard because the Complaint's factual allegations fall short of plausibly suggesting that CWRU's actions were motivated by sex-based bias.

**Selective Enforcement**

Plaintiff's attempt to establish a Title IX claim under the selective enforcement

standard fails for the same reason. A selective enforcement claim demonstrating gender bias must be supported with evidence "that a female was in circumstances sufficiently similar to [plaintiff's] and was treated more favorably by the University." *Mallory*, 76 F. App'x at 641, citing *Curto v. Smith*, 248 F.Supp.2d 132, 146-47 (N.D. N.Y. 2003). In other words, a plaintiff demonstrates selective enforcement through the identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges. See *Yusuf*, 35 F.3d at 716. Here, Plaintiff's Complaint fails to identify any female counterpart to support his selective enforcement claim. Jane Roe, the complainant against Plaintiff in the disciplinary proceedings, is not a counterpart for the purposes of a selective enforcement claim. See *Sterrett v. Cowan*, No. 14-CV-11619, 2015 WL 470601 at *16 (E.D. Mich. Feb. 4, 2015), *appeal filed*, No. 15-1121 (6th Cir.). Plaintiff's attempt to establish a selective enforcement claim by alleging that "CWRU's guidelines and regulations disproportionately affect the male student population of the CWRU community as a result of the higher incidence of female complainants of sexual misconduct against male complainants of sexual misconduct" misconstrues the standard. (Compl. ¶ 91). That CWRU's policy disproportionately affects males as a result of the higher number of complaints lodged against males does not demonstrate selective enforcement by the university. Rather, "a plaintiff must allege facts sufficient to give rise to an inference that the school intentionally discriminated against the plaintiff *because* of his or her sex […]." *Doe v. Columbia Univ.*, 2015 WL 1840402 at 15 (internal citations omitted). Plaintiff's Complaint fails to do so. As such, Plaintiff has not stated a claim for which relief can be granted under Title IX's selective enforcement standard.

11

**Deliberate Indifference**[1]

Plaintiff's Complaint alleges that CWRU "had actual notice of the irresponsible, improper and sexually-biased manner in which the allegations against Plaintiff were being investigated and adjudicated."  Further, the Complaint states that CWRU had authority to institute corrective measures but was deliberately indifferent to the misconduct.  The Complaint alleges that "CWRU's deliberate indifference was motivated by Plaintiff's gender."  (Comp. ¶ 95-97).

Plaintiff's Complaint contains factual allegations that create a plausible inference that CWRU's disciplinary hearings were procedurally flawed.  However, the Complaint does not contain factual allegations that plausibly suggest that these flaws were based on bias against Plaintiff's gender.  Further, to state a claim for relief under Title IX's deliberate indifference standard, Plaintiff is required to make factual allegations that support an inference that CWRU's refusal to rectify procedural defects was motivated by sex-based discrimination. See *Mallory*, 76 F. App'x at 639.  Plaintiff's conclusory statement that "CWRU's deliberate indifference was motivated by Plaintiff's gender" does not meet this pleading standard.  Therefore, Plaintiff's Complaint fails to state a claim for relief under Title IX's deliberate indifference standard.

---

[1] **District courts within the Sixth Circuit disagree as to whether a plaintiff must allege sexual harassment by the educational institution as a "critical component" of a deliberate indifference claim. See *Sahm v. Miami Univ.*, No. 1:14-CV-698, 2015 WL 93631, at \*n.1 (S.D. Ohio Jan. 7, 2015), quoting *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009). Whereas the court in *Univ. of the S.* held sexual harassment to be essential to a deliberate indifference claim, a sister court in the Southern District of Ohio disagreed. See *Wells v. Xavier Univ.*, 7 F.Supp.3d 745, 751-52 (S.D. Ohio 2014). The *Wells* court held that a plaintiff can present a *prima facie* deliberate indifference claim by producing evidence that a university has actual knowledge of institutional misconduct, *including* an alleged defective hearing, and fails to correct that misconduct. *Id.* In the instant case, the Court declines to make a determination on this issue as the Plaintiff fails to state a claim for which relief can be granted under Title IX for other reasons.**

Because Plaintiff's Complaint does not contain factual allegations that plausibly suggest that CWRU's alleged misconduct under the erroneous outcome, selective enforcement, or deliberate indifference standards was motivated by sex-based bias, Defendants' Motion to Dismiss is granted as to Plaintiff's Title IX claims.

**Plaintiff's Claims for Declaratory Judgment and Injunctive Relief**

Plaintiff seeks a declaratory judgment invalidating the conclusions of the Defendants' disciplinary hearings. Federal courts have "unique and substantial discretion in deciding whether to declare the rights of the litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 2142, 132 L. Ed. 2d 214 (1995). The Sixth Circuit traditionally focuses on the five factors in determining whether a District Court properly exercised its discretion: 1) whether the declaratory action would settle the controversy; 2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata"; 4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and 5) whether there is an alternative remedy which is better or more effective. *Doe v. Univ. of the S.*, 687 F. Supp. 2d at 759-60, citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir.1984).

Here, the Court has already determined that Plaintiff failed to state a claim for relief under Title IX. Without an actionable claim, there is no controversy to be settled. A declaratory action is unnecessary. Therefore, Defendants' Motion to Dismiss Plaintiff's claim for Declaratory Judgment is granted.

13

Similarly, injunctive relief is not available where a plaintiff's underlying claims lack merit. *Mason & Dixon Lines Inc. v. Steudle*, 683 F.3d 289, 297 (6th Cir. 2012), citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Plaintiff requests injunctive relief requiring Defendants to reinstate him as a student and remove references of violations from his educational records.  However, Plaintiff's Complaint failed to state a claim under Title IX upon which relief can be granted.  Therefore, Plaintiff's underlying claim lacks merit and Defendants' Motion to Dismiss his claim for Injunctive Relief is granted.

**Plaintiff's Remaining State-Law Claims**

In light of the Court's dismissal of Plaintiff's Title IX claims and claims for Declaratory Judgment and Injunctive Relief, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.  Generally, a district court will dismiss state-law claims without prejudice if federal claims are dismissed prior to trial.  *Mallory*, 76 F.App'x at 641, citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996).  Accordingly, the Court dismisses Plaintiff's remaining state-law claims without prejudice.

**Conclusion**

Plaintiff's Complaint failed to state a claim upon which relief can be granted under Title IX standards. The Court declines to exercise supplemental jurisdiction over the Complaint's remaining state-law claims. Therefore, the Plaintiff's Complaint is dismissed without prejudice in its entirety.

14

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  September 16, 2015